IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| REBECCA L. KENDALL | § | |
| | § | |
| V. | § | A-12-CV-847-AWA |
| | § | |
| WALGREEN CO. | § | |

## ORDER

Before the Court are: Defendant Walgreen Co.'s Motion for Summary Judgment, filed on October 30, 2013 (Dkt. # 29); Plaintiff's Response to Defendant's Motion for Summary Judgment, filed on November 14, 2013 (Dkt. #32);[1] and Defendant's Reply in Support of its Motion for Summary Judgment, filed on November 21, 2013 (Dkt. #35).

## I.   FACTUAL BACKGROUND

Plaintiff Rebecca L. Kendall ("Kendall") worked for Defendant Walgreen Co. ("Walgreens") from June 21, 2000 until she was terminated on October 6, 2011.  During the last six years of her employment, Kendall was working as a Store Manager of a Walgreens store in Round Rock, Texas. Kendall was the manager of one of 37 Walgreens stores in what Walgreens refers to as the "Austin East District."  Each "District" of  Walgreens has a District Manager and at the time of Kendall's termination, Johanna Viteri was the District Manager.  Walgreens further subdivides districts into "communities" of stores.   Community Leaders are responsible for assisting District Managers in mentoring, coaching, and helping develop employees.  The "Community Leader" for the community that contained Kendall's store was Jim Mead.

Kendall alleges that in September 2010, she and five other Walgreens employees filed a complaint with Walgreens Employee Relations alleging that then District Manager Kristen Reber had

---

[1] The Court **OVERRULES** Plaintiff's objections to Defendant's Exh. 8.

committed racial discrimination and retaliation.  Kendall complains that Walgreens "chose to do nothing as a result of the investigation." Complaint at ¶ 13.

In November 2010, Kendall alleges that Reber and Community Leader James Mead came to her store and that Reber yelled at her and demanded that she sell some Christmas products that had been exposed to rat feces and urine.  Kendall refused.  In January 2011, Kendall alleges that Reber verbally disciplined her for calling the police after a terminated employee refused to leave the store. Kendall alleges that after this incident, Mead repeatedly verbally abused her and used aggressive and foul language toward her.  For example, Plaintiff alleges that in April 2011, Mead yelled and cursed at her in her office in front of another employee, Shana Yoder.  Kendall alleges that Mead became so irate that she feared for her safety.  On April 28, 2011, Kendall sent an email to Michelle Stephens, in Employee Relations, complaining that Mead had been combative, rude, intimidating, bullying and unprofessional.  See Exh. 2 to Defendant's MSJ.  Walgreens investigated the complaint and interviewed Shana Yoder as part of the investigation.  Walgreens concluded that Kendall's allegations against Mead had not been corroborated and found that no discipline against Mead was warranted.

Kendall became very upset that Walgreens did not believe her version of events and on June 30, 2011, sent Michelle Stephens an email, expressing her frustration with the investigation, and informing Stephens that she had in her possession a written statement from Shana Yoder confirming Kendall's version of events.

In early July 2011, Kendall alleges that her physician advised her to take a medical leave of absence due to her alleged depressive disorder and the fact that her husband was undergoing cancer treatment.  Walgreens approved her request for 12 weeks of unpaid leave, pursuant to the Family and Medical Leave Act ("FMLA").  Kendall alleges that after she sent the new District Manager, Johanna

2

Viteri,[2] an email notifying her of the leave, Viteri expressed anger at Kendall for taking the leave. Viteri asked Kendall repeatedly "Who's your boss?" and asked Kendall if she would still take the leave if she was not paid. Kendall alleges that Viteri also asked her "Rebecca, what is your problem? What is wrong with you?" Kendall went on 12 weeks of unpaid FMLA leave on July 6, 2011, with the expectation of returning in September 2011.

Kendall alleges that only a week into her leave, Walgreens cleaned her personal items out of a shared desk, as if she was no longer employed. Kendall also points out that on July 12, 2011, Mead emailed another employee stating that he was unsure if Kendall would be returning to Walgreens after her leave. On July 25, 2011, the interim store manager installed a flash drive on Kendall's office computer to copy her files. On August 5, 2011, Walgreens deleted Kendall's name from the company website and blocked her from accessing the company computers.

In mid-September 2011, Viteri texted Kendall to ask her when she would be returning to work. Kendall responded that she would be returning the following week, which was within her 12 week FMLA leave period. Viteri told Kendall that she could not meet with Kendall then, so she asked Kendall to wait to return to work until Viteri contacted her again. At the beginning of October 2011, Viteri called Kendall and asked her to report to the District Office on October 6, 2011, to "talk about things." Complaint at ¶ 21. When Kendall arrived at the meeting, she alleges that was immediately interrogated by two district managers, a loss prevention officer and two company lawyers regarding the written witness statement that she had obtained from Yoder. At the end of the meeting, Viteri terminated Kendall.

Walgreens contends that Kendall was terminated for interfering in a Walgreens workplace investigation, poor performance and bad decision-making. Walgreens points out that Kendall had

---

[2]Johanna Viteri replaced Kristen Reber as District Manager on May 26, 2011.

3

been placed on a Performance Improvement Plan in September 2010, had received two written warnings in the first half of 2011, and had received a "Needs Improvement" rating on her last review before she was terminated.

With regard to the workplace investigation, Walgreens contends that while Kendall was out on leave, Loss Prevention[3] investigated whether Kendall had violated Walgreens' workplace investigation protocols by directly taking a statement from a witness, Shana Yoder.  Walgreens contends that Kendall had been warned before about contacting witnesses during investigations. Walgreens contends that Loss Prevention was unable to finish the investigation until Kendall returned from leave, because Kendall needed to be interviewed about the matter and it is Walgreens' policy not to interview employees who are out on medical leave.  Therefore, Walgreens determined that Kendall would be interviewed as soon as she returned from leave.  Accordingly, Kendall was instructed to report to the District Office instead of her store on the day she returned from leave, so that Loss Prevention could interview her about the matter.  Los Prevention investigators Kerri Kaufmann and Chris Davis interviewed Kendall on October 5, 2011, and determined that Kendall had in fact taken the statement from Yoder even though she had been previously warned about this, and that she had failed to give a copy of the statement to Walgreens.  In addition, Loss Prevention determined that Yoder had indicated that she had felt pressured by Kendall to give a statement favorable to Kendall.  After being informed of the results of the investigation, Walgreens contends that Viteri decided to terminate Kendall.  Walgreens contends that Viteri did not consult with Mead or Reber regarding whether to terminate Kendall.

---

[3]Loss Prevention is the department which investigates employee complaints.

## II.  PROCEDURAL BACKGROUND

On September 12, 2012, Kendall filed this lawsuit against Walgreens, Johanna Viteri and James Mead, alleging retaliation and interference claims under the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. §2601, et seq., disability and perceived disability discrimination under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12111(5)(A) and sex discrimination and retaliation under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e-2.  On November 1, 2013, the District Court granted the parties' Joint Motion to Dismiss Defendants Johanna Viteri and James Mead from this lawsuit.  See Dkt. # 30.  Thus, Walgreens is the only remaining defendant.

On October 30, 2013, Walgreens filed its Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56 arguing that it is entitled to judgment as to all of Kendall's claims in this lawsuit.  In response, Kendall concedes that her claims under Title VII and her actual disability claim under the ADA should be dismissed from this lawsuit.  Accordingly, the claims at issue on this motion are Kendall's retaliation and interference claims under the FMLA, and her perceived disability claim under the ADA.  On March 6, 2014, pursuant to the parties' consent, the District Court referred and reassigned this case to the undersigned in accordance with 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73.  On March 26, 2014, the Court held a hearing on Walgreens' Motion for Summary Judgment.

## III.  STANDARD OF REVIEW

Summary judgment is appropriate if the moving party can show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "A factual dispute is 'genuine' where a reasonable party would return a verdict for the non-moving party." *Chiu v. Plano Indep. Sch. Dist.*, 339 F.3d 273, 282 (5th Cir. 2003) (citation omitted).  In considering a summary judgment motion, courts view the evidence in the light most

favorable to the non-moving party. *United Fire & Cas. Co. v. Hixson Bros., Inc.*, 453 F.3d 283, 285 (5th Cir. 2006). However, "[u]nsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment." *Brown v. City of Houston*, 337 F.3d 539, 541 (5th Cir. 2003).

## IV.   ANALYSIS

### A.   Kendall's FMLA Claims

Congress enacted the FMLA to permit eligible employees "to take reasonable leave for medical reasons, for the birth or adoption of a child, and for the care of a child, spouse, or parent who has a serious health condition." *Elsensohn v. St. Tammany Parish Sheriff's Office*, 530 F.3d 368, 372 (5th Cir. 2008) (citing 29 U.S.C. § 2601(b)(2)). Upon the employee's timely return, the employer must reinstate the employee "to the same position as previously held or a comparable position with equivalent pay, benefits, and working conditions." *Smith v. E. Baton Rouge Parish Sch. Bd.*, 453 F.3d 650, 651 (5th Cir. 2006) (citing 29 U.S.C. § 2614(a)(1)). Under Section § 2615(a)(1) of the Act, an employer may not "interfere with, restrain, or deny the exercise of or the attempt to exercise" any right provided under the FMLA. The Act also makes it "unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter." 29 U.S.C. § 2615(a)(2).

Thus, § 2615(a) of the Act creates two types of claims: (1) *interference claims*, in which an employee asserts that his employer denied or otherwise interfered with his substantive rights under the Act, and (2) *retaliation claims*, in which an employee asserts that this employer discriminated against him because he engaged in activity protected by the Act. A major distinction between these two types of claims is that interference claims *do not* require a showing of discriminatory intent, whereas retaliation claims *do*. *See Cuellar v. Keppel Amfels, L.L.C.,* 731 F.3d 342, 349 (5th Cir. 2013) (J. Elrod, concurring). In addition, the majority of courts hold that the *McDonnell Douglas* burden-

6

shifting framework does not apply to interference claims under the FMLA, but do apply to retaliation claims.[4] Kendall alleges both retaliation and interference claims against Walgreens in this lawsuit. The Court will address the interference claim first.

      1.    **Interference Claim**

Department of Labor regulations provide that "interfering with" the exercise of an employee's rights "would include, for example, not only refusing to authorize FMLA leave, but discouraging an employee from using such leave" and "manipulation by a covered employer to avoid responsibilities under FMLA." *Cuellar,* 731 F.3d at 346 (quoting 29 C.F.R. § 825.220(b))*.* In addition, a plaintiff can show interference by showing that an employer interfered with her right to reinstatement following FMLA leave. *See Ford-Evans v. Smith,* 206 F. App'x. 332, 335 (5th Cir. 2006) ("the right to reinstatement upon return from leave is a right protected by FMLA's interference provision"); *Allen v. Babcock & Wilcox Tech. Serv. Pantex, LLC*, 2013 WL 5570192, at * 15 (N.D. Tex. Oct. 9, 2013) (same). "An employer can deny the right to reinstatement, however, if it can demonstrate that it would have discharged the employee had he not been on FMLA leave." *Strickland v. Water Works and Sewer Bd. of City of Birmingham*, 239 F.3d 1199, 1208 (11th Cir. 2001).

To establish a prima facie case of interference, Plaintiff must show that (1) she was an eligible employee, (2) her employer was subject to the FMLA's requirements, (3) she was entitled to leave, (4) she gave proper notice of her intention to take FMLA leave, (5) her employer denied her the benefits to which she was entitled under the FMLA; and (6) she was prejudiced. *Lanier v. Univ. of Tex. Sw. Med. Ctr.*, 527 F. App'x 312, 316 (5th Cir. 2013); *Cuellar,* 731 F.3d at 347.  Walgreens argues that Kendall cannot make out the fifth element because Kendall was granted and actually took

---

    [4]See *Diaz v. Fort Wayne Foundry Corp.*, 131 F.3d 711, 712 (7th Cir. 1997); *Sanders v. City of Newport*, 657 F.3d 772, 778 (9th Cir.2011); *Colburn v. Parker Hannifin/Nichols Portland Div.*, 429 F.3d 325, 332 (1st Cir.2005); and *Smith v. CVS Caremark Corp.*, 2013 WL 2291886, *3 at n. 4 (N.D. Tex. May 23, 2013).

her full twelve weeks of leave.  Thus, Walgreens contends that Kendall cannot show that she was denied any benefits under the FMLA.  Kendall, however, contends that Walgreens interfered with her right to *reinstatement* to her job when she returned from leave.  Kendall argues that her return from leave involved nothing but a termination meeting, which cannot be considered "reinstatement" under the Act.  The Court agrees.

As noted above, some courts have held that a plaintiff can make out an interference claim by showing that her employer interfered with her right to reinstatement following leave.  *See Shafer v. Am. Med. Ass'n*, 662 F.3d 439, 443–44 (7th Cir.2011) ( "If [the employee] can demonstrate that the [employer] fired him to prevent him from exercising his right to reinstatement in his position, he can succeed on an interference theory"); *Nero v. Industrial Molding Corp.,* 167 F.3d 921, 927 (5th Cir. 1999) (finding that plaintiff was pursuing an interference claim where he alleged that he wasn't restored to his job).  While the Act does not require an employer to retain an employee indefinitely after medical leave, returning an employee "to a position only long enough to be fired does not amount to a meaningful reinstatement under the statute."  *Burke v. Laboratory Corp. of America*, 2009 WL 3242014, at * 5 (M.D. Fla. Oct. 6, 2009).  In *Burke* the employer argued that the interference claim failed because the employer had reinstated the plaintiff to her job for one day.  The court rejected this argument finding that the plaintiff had not been "reinstated" within the meaning of the Act, because "the law's protections extend beyond reinstating a person to a job for three minutes."  *Id.;*  Many other courts have reached the same conclusion on similar facts.[5]   For these

---

[5]*Campbell v. Gambro Healthcare, Inc.*, 478 F.3d 1282, 1288 (10th Cir. 2007) (plaintiff made prima facie interference claim where "termination was a foregone conclusion by the time she returned to work, and her 'restoration' to her prior duties during the period of January 5-14, 2004 was illusory."); *VanStory-Frazier v. CHHS Hospital Co.*, 2010 WL 22770, at * 10 (E.D. Pa. Jan. 4, 2010) (plaintiff could pursue interference claim even though she was returned to her position for two weeks before she was fired); *Ostermyer v. Toledo Clinic, Inc.*, 2005 WL 927120, at * 5 (N.D. Ohio April 18, 2005) ("While the FLMA does not entitle an employee to a perpetual position with

same reasons, the Court rejects Walgreens argument that Kendall's interference claim fails because "she applied for and was granted the full twelve weeks of leave provided for by the FMLA." Walgreens MSJ at p. 19. Kendall was never allowed to return to her store to act as store manager before she was fired. Instead, she was ordered to report to the District Office on the day she returned from leave to "talk about things." At that time she was interviewed regarding the statement she obtained from Yoder, and then was fired shortly thereafter. These facts are sufficient to make out a potential interference claim under the FMLA.

There is, however, another basis on which dismissal of this claim is appropriate. While a plaintiff can technically pursue both an interference and a retaliation claim under the FMLA,[6] the Court finds that here, Kendall's interference claim is duplicative of her retaliation claim. The essence of Kendall's interference claim is that she was retaliated against for taking leave by being fired, not that her rights were simply interfered with. *See* Plaintiff's Complaint at ¶ 25. This is the same argument she makes with regard to her retaliation claim. In her concurrence in *Cuellar*, Judge Elrod advised courts to look to the substance of a plaintiff's claim to determine whether it arises from the deprivation of an FMLA entitlement (interference) or from punishment exacted for the plaintiff's exercise of an FMLA right (retaliation). *Cuellar*, 731 F.3d at 351. In *Nero* the Fifth Circuit found that because the plaintiff had "repeatedly disavowed" the theory that "he got fired because of taking

---

her employer, I find no support for the proposition that an employer may skirt its reinstatement obligations merely by allowing an employee to work for a short period of time after receiving notice of her termination." ).

[6] *See also, Erdman v. Nationwide Ins. Co.*, 582 F.3d 500, 509 (3rd Cir. 2009) ("We therefore hold that firing an employee for a valid request for FMLA leave may constitute interference with the employee's FMLA rights as well as retaliation against the employee); *Kauffman v. Fed. Express Corp.*, 426 F.3d 880, 884 (7th Cir. 2005) ("A claim under the FMLA for wrongful termination can be brought under either a discrimination/retaliation or interference/entitlement theory; the difference is that the first type of claim requires proof of discriminatory or retaliatory intent while the latter requires only proof that the employer denied the employee his or her entitlements under the Act.").

the leave" and clarified that the crux of his claim was that he was not restored to his job, the Court found that he was pursuing an interference claim and not a retaliation claim.  *Nero*, 167 F.3d at 927. Because the two claims are essentially identical, all of the relevant case law suggests that Kendall's interference claim should be dismissed.[7]  Accordingly, the Court **GRANTS** summary judgment with regard to Kendall's FMLA interference claim

### 2.    Retaliation Claim

Kendall alleges that Walgreens retaliated against her for taking FMLA leave by terminating her employment. The FMLA prohibits employers from discharging or in any other manner discriminating against an individual for opposing any practice made unlawful by the act.  29 U.S.C. § 2615(a)(2).  The Department of Labor has interpreted this statutory provision to forbid employers from terminating employees for having exercised their FMLA rights.  *Ion v. Chevron USA, Inc.*, 731 F.3d 379, 389 (5th Cir. 2013) (citing 29 C.F.R. § 825.220(c)).

### a.    Applicable Standard

When there is no direct evidence of retaliatory intent, as in this case, the familiar *McDonnell–Douglas* burden-shifting framework applies to FMLA retaliatory discharge claims. *Id.* Under this framework, Kendall has the initial burden of establishing a prima facie case of retaliatory

---

[7] *See Seeger v. Cincinnati Bell Tel. Co.,* 681 F.3d 274, 282(6th Cir. 2012) (affirming district court's decision to construe interference claim as a retaliation claim);  *Stallings v. Hussmann Corp.,* 447 F.3d 1041, 1051 (8th Cir. 2006) (affirming district court's consolidation of interference and retaliation claims since plaintiff's interference claim was "fundamentally a claim for retaliation"); *Spears v. Louisiana Dep't of Pub. Safety and Corr.*, 2014 WL 905185, at * 3 (M.D. La. March 7, 2014) (dismissing interference claim where plaintiff asserted both retaliation and interference because interference claim was essentially a retaliation claim);  *Lister v. Nat'l Oil Well Varco, L.P.*, 2013 WL 5515196, at * 29 (S.D. Tex. Sept. 30, 2013) (finding that plaintiff's interference claim was "a wrongful termination claim, but not an FMLA interference claim.");  *Atchison v. Sears*, 666 F. Supp.2d 477, 489 (E.D. Pa. 2009) ("In this case, Atchison's interference claim is identical to his retaliation claim, and premised on the same allegation that Sears took adverse employment action against him because he requested FMLA leave. He cannot escape the *McDonnell Douglas* analysis to prove his case merely by affixing an "interference" label to one of his duplicative claims.").

10

discharge by showing that (1) she engaged in a protected activity, (2) Walgreens discharged her, and (3) there is a causal link between the protected activity and the discharge. *Richardson v. Monitronics Int'l Inc.,* 434 F.3d 327, 332 (5th Cir. 2005). If Kendall can establish a prima facie case, the burden shifts to Walgreens to articulate a legitimate, nondiscriminatory reason for terminating her. *Id.* If Walgreens articulates such a reason, the burden shifts back to Kendall to show by a preponderance of the evidence that Walgreens' articulated reason is a pretext for discrimination. *Id.* at 332-333.

In this case, Kendall argues that the Court should not apply the traditional *McDonnell-Douglas* framework, but instead should apply the mixed-motive framework. In *Richardson,* the Fifth Circuit held that the mixed-motive framework applies to FMLA claims in which retaliatory animus was a motivating factor in an adverse employment action. 434 F.3d at 332. The mixed-motive framework applies to cases in which the employee concedes that discrimination was not the sole reason for her discharge, but argues that discrimination was a motivating factor in her termination. *Id.* at 333. The mixed-motive framework modifies the third step in the standard *McDonnell-Douglas* framework by allowing an employee to avoid summary judgment by offering sufficient evidence to create a genuine issue of fact that the employer's reason, although true, is but one of the reasons for its conduct, another of which was retaliation. *Id.* If the employee proves that discrimination was a motivating factor in the employment decision, the burden again shifts to the employer, this time to prove that it would have taken the same action despite the retaliatory animus. *Id.*

Walgreens argues that the Court should not apply the mixed-motive framework in this case in light of the Supreme Court's decisions in *University of Texas Southwestern Med. Ctr. v. Nassar,* 133 S.Ct. 2517 (2013), and *Gross v. FBL Fin. Serv., Inc.,* 557 U.S. 167 (2009), which limited the applicability of the mixed-motive framework in cases involving Title VII and the Age Discrimination in Employment Act. Because the anti-retaliation provisions in the FMLA and Title VII are similar, Walgreens argues that the mixed-motive analysis should no longer be applied to

11

FMLA retaliation cases.  The Fifth Circuit has not yet determined whether the reasoning of *Gross* and *Nassar* applies to FMLA retaliation cases.  *Ion v. Chevron USA, Inc.*, 731 F.3d 379 (5th Cir. 2013) (applying mixed-motive analysis and noting that "we need not, and do not, decide whether *Nassar's* analytical approach applies to FMLA-retaliation claims and, if so, whether it requires a plaintiff to prove but-for causation.").[8]  *Richardson* is still the law in this circuit.  Thus, the Court is bound to follow it and apply the mixed-motive framework to Kendall's claim.  *See Mathis v. BDO USA, LLP,* 2014 WL 975706, at * 6 (S.D. Tex. March 12, 2014) (applying *Richardson* and mixed-motive standard to FMLA case "until a higher court says otherwise").[9]

_____

[8]Like the Fifth Circuit in *Ion*, some courts have questioned the viability of the mixed-motive analysis in FMLA cases, but have nevertheless chosen to "leave for another day" the resolution of whether the FMLA continues to allow mixed-motive claims. *See Lichenstein v. Univ. of Pittsburgh Med. Ctr.*, 691 F.3d 294, 302 (3rd Cir. 2012);  *Twigg v. Hawker Beechcraft Corp.*, 659 F.3d 987, 1004 (10th Cir. 2011).  However, the Sixth Circuit has held that the mixed-motive framework still applies to FMLA cases.  *See Hunter v.Valley View Local Sch.*, 579 F.3d 688, 692 (6th Cir. 2009).  The Department of Labor has taken a similar position, stating its view in an amicus brief that the FMLA continues to allow mixed-motive claims. *See* Brief for the Sec'y of Labor as Amicus Curiae in Support of Plaintiff–Appellant, *Breeden v. Novartis Pharm. Corp.*, 646 F.3d 43 (D.C. Cir.2011) (Nos. 10–7073; 10–7078).  In *Johnson v. Benton Cnty. Sch. Dist.*, 926 F. Supp.2d 899, 905 (N.D. Miss. 2013), the judge noted that district courts in this Circuit are in urgent need for some clarification of the law with regard to what standard to apply in FMLA retaliation cases, noting: "As things stand now, district courts in this circuit have no clear idea how they should instruct juries regarding what causation standard is applicable in some of the most important employment discrimination causes of action."  There, the court certified the mixed-motive issue for immediate interlocutory appeal, but the parties settled the case before an appeal was taken.

[9]*Johnson v. Benton Cnty. Sch. Dist.*, 926 F. Supp.2d 899, 905-06 (N.D. Miss. 2013) (holding that mixed-motive analysis still applies in FMLA retaliation claims despite *Gross*); *Picard v. Louisiana ex rel. Dept. of Justice,* 931 F. Supp.2d 731, 737 (M.D. La. 2013) (applying mixed-motive standard to FMLA retaliation claim).  *See also, McKenna v. Liberty Mutual Group, Inc.*, 468 F. App'x 413, 417 (5th Cir. 2012) (applying mixed-motive framework to FMLA retaliation claim); *Reyes v. Texas Health & Human Serv. Comm'n*, 2013 WL 6633993, at *5 (same);  *Harville v. Texas A&M Univ.*, 833 F. Supp.2d 645, 657 (S.D. Tex. 2011) (same).

b.      Analysis

Walgreens does not dispute that Kendall has alleged a prima facie case of retaliation under the FMLA. The analysis thus starts by asking whether Walgreens has articulated a legitimate, nondiscriminatory reason for terminating Kendall. Walgreens argues that it terminated Kendall because an investigation revealed that she had interfered in a Loss Prevention investigation (after having been previously warned about such behavior), and that she had a documented history of performance problems. This shifts the burden back to Kendall to offer evidence that a genuine issue of fact exists regarding whether Walgreens' nondiscriminatory reasons, although true, are only some of the reasons for its conduct, another of which was discrimination. *Ion*, 731 F.3d at 391. In other words, Kendall "must offer evidence to show that the exercise of [her] FMLA rights was a motivating factor in [her] termination." *Id.*

In support of her argument that her decision to take FMLA leave was a motivating factor in Walgreens' termination decision, Kendall points to the following summary judgment evidence. First, Kendall relies on a phone conversation she had with District Manager Johanna Viteri shortly after she told Viteri she was taking FMLA leave. Kendall testified in her deposition that Viteri was hostile and angry with her for taking leave and asked her questions such as "What if I don't pay you, are you still going to go leave?" and "What's wrong with you, why can't you work?" Att. A to Plaintiff's Response, Kendall Dep. at 100-102, 245-247. In a case with similar facts, a court found that a supervisor's negative comments regarding an employee's FMLA leave created a genuine issue of material fact as to the reason for the employee's termination. *Villalon v. Del Mar College Dist.*, 2010 WL 3221789, at *6 (S.D. Tex. Aug. 13, 2010).

Kendall has also submitted summary judgment evidence that during her leave, Walgreens removed all of her personal belongings from her workspace and removed her name from the Walgreens' website information page. These actions are consistent with Kendall's argument that

13

Walgreens never intended to reinstate Kendall after she returned from leave. Kendall also points to an email from Jim Mead to another Walgreens' Manager indicating that he did not know "when/if" Kendall would be returning from leave. Lastly, Kendall was terminated the very day that she returned from her FMLA leave. A close temporal proximity between the taking of leave and termination can be evidence of pretext. *See Baumeister v. AIG Global Inv. Corp.*, 420 F. App'x. 351, 356 (5th Cir. 2011). The evidence that Kendall cites is sufficient to create a fact issue as to whether her leave was a motivating factor in Walgreens' decision to terminate her.

Thus, the burden shifts back to Walgreens to prove that it would have terminated Kendall even if it did not have a discriminatory motive. At the summary judgment stage, Walgreens must establish facts such that the Court may conclude as a matter of law that Walgreens would have fired Kendall even without any discriminatory intent. *Ion*, 731 F.3d at 392. To satisfy this burden, Walgreens relies on the same evidence that it presented in the second step: (1) Kendall interfered in a Loss Prevention investigation, and (2) she had a documented history of performance problems. While reliance on the same evidence under both steps may be adequate, "the final step requires the employer to meet a more stringent burden of persuasion and show that it would have taken the same action regardless of the retaliatory motive." *Id.*

Walgreens' evidence fails to meet this higher standard. As discussed above, Kendall has demonstrated that there is a fact issue with regard to this question. In addition, Kendall testified that she was following Loss Prevention Officer Rick Gaitan's instructions when she obtained a statement from Shana Yoder. Kendall also points out that there is nothing in the record to suggest that she was going to be terminated for performance problems before she took FMLA leave, and Walgreens' reliance on her performance is plainly pretextual. *See Reyes*, 2013 WL 6633993, at *3 ("A plaintiff can show pretext by showing that the reasons given for management's actions are simply not believable"). Walgreens' evidence is insufficient at this stage to satisfy its high burden to prove that

14

it would have fired Kendall regardless of its retaliatory motive.  Accordingly, the Court **DENIES** Walgreens' Motion for Summary Judgment with regard to Kendall's FMLA retaliation claim.

**C.**     **Kendall's ADA Claim**

Kendall alleges that Walgreens terminated her, in part, based on its perception that she suffered from a mental health disability, in violation of 42 U.S.C. § 12112(a).

The ADA prohibits an employer from discriminating against a qualified employee on the basis of his disability. *Griffin v. United Parcel Serv., Inc.*, 661 F.3d 216, 221–22 (5th Cir. 2011).  "The ADA's definition of disability permits suits by plaintiffs who, though not actually disabled per se are nonetheless regarded as having such an impairment." *Kemp v. Holder*, 610 F.3d 231, 236-37 (5th Cir. 2010) (internal quotations and citations omitted).  A party is regarded as having such an impairment, if the party can show that (1) an employer mistakenly believes that the employee has an impairment that substantially limits one or more major life activities, or (2) an employer mistakenly believes that an actual, nonlimiting impairment substantially limits one or more major life activities.  *Id*. at 237. "[B]oth of these showings require that the plaintiff demonstrate that the employer actually entertain[ed] misperceptions about the individual—it must believe either that one has a substantially limiting impairment that one does not have or that one has a substantially limiting impairment when, in fact, the impairment is not so limiting." *Id.* (internal citations and quotations omitted).

Kendall has failed to demonstrate that there is a genuine fact issue that Walgreens regarded her as disabled based on her alleged depression or that Walgreens terminated her because of that perception.  The only evidence Kendall relies on in support of her claim is Viteri's statement in her phone conversation with Kendall in which she asked "What's wrong with you, why can't you work?" Plaintiff's Response to MSJ at p. 13.  Kendall makes more out of this statement than is justified.  In fact, Viteri's statements appear to undermine Kendall's claim that Walgreens believed she had a disability.  As Kendall concedes in her Response, "Viteri's words and tone do not suggest that she

believe[d] Kendall had a valid medical condition, despite the fact that Kendall was diagnosed by her psychologist with depression."  Plaintiff's Response to MSJ at p. 14.  The appropriate interpretation of Viteri's statements is that Viteri believed Kendall was a malingerer, and was *not* ill.  *See Ruhling v. Tribune Co.*, 2007 WL 28283, at *13 (E.D.N.Y. Jan. 3, 2007) (dismissing perceived disability claim where evidence showed that employer believed employee was "faking" her disability); *Rodriguez v. Loctite Puerto Rico, Inc.*, 967 F. Supp. 653, 658-59 (D. Puerto Rico 1997) (evidence that plaintiff's co-workers considered her a malingerer not evidence of a perceived disability claim). Kendall has failed to point to any other evidence showing that Walgreens regarded her as disabled due to her depression.  Kendall has failed to establish a prima facie case of perceived disability discrimination, and Walgreens is entitled to summary judgment on this claim.

**D.    Summary**

Based upon the foregoing, Walgreens' Motion for Summary Judgment (Dkt. # 29) is **GRANTED IN PART** and **DENIED IN PART**.  The Court **GRANTS** the Motion for Summary Judgment with regard to Kendall's Title VII, ADA and FMLA interference claims.  The Court **DENIES** the Motion with regard to Kendall's FMLA retaliation claim.

SIGNED this 16th day of April, 2014.

_____

ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE